**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1158-16T3

ORDER OF ST. BENEDICT OF
NEW JERSEY,

    Plaintiff-Appellant,

v.

GREGORY G. GIANFORCARO,
ESQ.,

    Defendant-Respondent.

_____

Argued April 19, 2018 — Decided July 27, 2018

Before Judges Simonelli and Haas.

On appeal from Superior Court of New Jersey,
Law Division, Morris County, Docket No.
L-2323-12.

Christopher W. Kinum argued the cause for
appellant (Critchley, Kinum & Denoia, LLC,
attorneys; Michael Critchley, Christopher W.
Kinum and Christopher L. Fox, on the briefs).

Christopher J. Carey argued the cause for
respondent (McElroy Deutsch Mulvaney &
Carpenter, LLP, and David L. Norris,
attorneys; Christopher J. Carey, of counsel
and on the brief; Theodore T. Reilly and
Venanzio E. Cortese, on the brief).

PER CURIAM

This matter involves defendant Gregory G. Gianforcaro's alleged breach of a confidentiality clause in a settlement agreement between W.P.W., a former student at Delbarton School, and his parents (collectively W.W.),[1] and plaintiff Order of St. Benedict of New Jersey (OSBNJ), regarding sexual misconduct claims against a priest. OSBNJ filed a complaint against Gianforcaro, alleging breach of contract, tortious interference with contractual relations, breach of duty of good faith and fair dealing, tortious interference with prospective economic advantage, and civil conspiracy.

OSBNJ appeals from the September 27, 2013 Law Division order, which denied its motion to amend the complaint to assert a legal malpractice claim against Gianforcaro. OSBNJ also appeals from the March 6, 2015 order, which granted summary judgment to Gianforcaro on the breach of contract and breach of duty of good faith and fair dealing.[2] We affirm the September 27, 2013 order,

---

[1] We use initials to identify the parties involved in this matter pursuant to Rule 1:38-3.

[2] In an October 11, 2016 consent order, OSBNJ consented to dismissing the remaining claims with prejudice. The September 27, 2013 and March 6, 2015 orders are appealable because the consent order reserved OSBNJ's right to appeal. See Whitfield v. Bonanno

A-1158-16T3

reverse the March 6, 2015 order, and remand for further proceedings.

I.

We derive the following facts from the evidence submitted by the parties in support of, and in opposition to, the summary judgment motion, viewed in the light most favorable to OSBNJ. Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017).

In 1988, W.W. and their then-attorney, Thomas Roth, and OSBNJ and its then-attorney, Edward F. Broderick, Jr., executed a settlement agreement and release,[3] which contained the following confidentiality clause:

> [W.W.] and their attorney will keep confidential and not make public, or knowingly or negligently reveal to anyone, including, without limitation, any current, former or future student of Delbarton School or member . . . of their family, any information regarding [W.W.'s] claims against . . . [OSBNJ], or disclose any claim that is in any way related to this [s]ettlement [a]greement and [g]eneral [r]elease, or the terms or existence of this [s]ettlement [a]greement and [g]eneral [r]elease, including, without limitation, the amount, or amounts, they are receiving under it. [OSBNJ] will keep confidential and not make public or knowingly or negligently reveal to anyone, any

---

Real Estate Group, 419 N.J. Super. 547, 550-51 and n.3 (App. Div. 2011); Janicky v. Point Bay Fuel, Inc., 410 N.J. Super. 203, 207 (App. Div. 2009).

[3] Other individuals who also executed the settlement agreement are not involved in this matter.

3

information regarding . . . [W.W.'s] claims against [OSBNJ] and will mutually maintain confidentiality about the terms and conditions of this [s]ettlement [a]greement except to the extent applicable to the terms of this [s]ettlement [a]greement.

[(Emphasis added).]

The confidentiality clause contained the following liquidated damages provision:

[OSBNJ] shall have the unequivocal right to cease further payments, and to recover the full amount paid to . . . [W.W.] under this [s]ettlement [a]greement and [g]eneral [r]elease, if they or their agents or attorney knowingly or negligently breach this confidentiality provision.

[(Emphasis added).]

The settlement agreement also provided that:

Mr. Roth and his partners will keep confidential and will not knowingly or negligently make public or reveal to anyone, including, without limitation, any current, former or future student of Delbarton School or member of their family, any information regarding . . . [W.W.'s] claims against . . . [OSBNJ], or any claim that is in any way related to their [s]ettlement [a]greement and [g]eneral [r]elease or the terms of this [s]ettlement [a]greement and [g]eneral [r]elease, including, without limitation, the amount . . . [W.W.] are receiving under it.

The settlement agreement contained the settlement amount. It further provided that "[t]he [s]ettlement [a]greement and [g]eneral [r]elease contains the entire agreement between . . .

4

[W.W.] and . . . [OSBNJ] with regard to the matters set forth herein and <u>shall be binding upon and enure to the benefit of the</u> executors, administrators, <u>personal representatives</u>, heirs, successors, and assigns of each. (Emphasis added). The settlement agreement required that "[a]ll applications for relief under the terms of this [s]ettlement [a]greement and [g]eneral [r]elease shall be on twenty days . . . notice to the other party, and in writing[.]"

Gianforcaro began representing W.W. in 2012. He filed a complaint in the Superior Court, seeking to void the confidentiality clause. He had read the settlement agreement prior to filing the complaint, and knew of the settlement amount and the confidentiality clause and liquidated damages provision. He held a press conference outside the Morris County Courthouse the day he filed the complaint, and publicly revealed that the settlement amount "was approximately seven figures." This lawsuit followed.

II.

OSBNJ filed a motion to amend the complaint to assert a legal malpractice claim against Gianforcaro. The motion judge denied the motion, finding as follows:

> [OSBNJ] sued for breach of contract and now
> wishes to amend the complaint to add [a] legal

> malpractice [claim] against . . . [Gianforcaro].
>
> I think that our understanding of when you can sue for malpractice where you don't have an attorney-client relationship differs. In order to [sue for malpractice where there is no attorney/client relationship] you have to show an independent duty which existed. . . . see Fitzgerald [v. Linnus,] 336 [N.J.] Super. 458, 468 [(App. Div. 2001)]. It's not the kind of duty and the cases decided are not like this.
>
> They involve a lawyer doing something with the . . . third-party . . . on which the third-party relies. Here, we just have an express contract where the attorney agrees that he's going to keep it confidential. That . . . failure to do so may very well be breach of contract, but it's not legal malpractice as I understand it.

On appeal, OSBNJ argues the judge erred in failing to recognize that an attorney's duty to a non-client is not restricted to situations involving the attorney's doing something with the non-client on which the non-client relies. OSBNJ cites to the balancing test set forth in Albright v. Burns, 206 N.J. Super. 625, 632-33 (App. Div. 1986) for determining an attorney's duty to a non-client:

> 1. "the extent to which the transaction was intended to affect the plaintiff;"
>
> 2. "the foreseeability of harm to" the plaintiff;
>
> 3. "the degree of certainty that the plaintiff suffered injury;"

6

4. "the closeness of the connection between the defendant's conduct and the injury suffered;" and

5. "the moral blame attached to the defendant's conduct, and the policy of preventing future harm."

OSBNJ claims it satisfied the first factor because Gianforcaro used the press conference and breach of the confidentiality provision to carry out his personal vendetta against Broderick and advance his publicity campaign in order to obtain clients to sue OSBNJ and gain leverage in connection with his four pending cases against OSBNJ. As to the remaining factors, OSBNJ argues Gianforcaro's purpose in breaching the confidentiality provision "was to negatively affect OSBNJ and advance [his] personal interests[;]" "there was 100% foreseeability of harm to OSBNJ and 100% certainty that OSBNJ would suffer injury" because Gianforcaro's purpose "was to harm and injure OSBNJ;" there was a close connection between Gianforcaro's conduct and the injury OSBNJ suffered; and "a duty must be imposed on . . . [him] to prevent attacks from being carried out by attorneys in the future."

OSBNJ further argues that under Fitzgerald, 336 N.J. Super. at 468, the interests of fairness and policy require finding that Gianforcaro owed a duty to OSBNJ, which he breached because: (1)

the right of confidentiality belonged to OSBNJ; (2) he was W.W.'s agent at the press conference; (3) once he became W.W.'s agent, he became bound by the settlement agreement and confidentiality provision; (4) the settlement agreement precluded him from discussing the settlement; and (5) he discussed the settlement at the press conference, specifically mentioning the settlement amount was seven figures. We disagree with OSBNJ's arguments.

"Rule 4:9-1 requires that motions for leave to amend be granted liberally" and that "the granting of a motion to file an amended complaint always rests in the court's sound discretion." Kernan v. One Wash. Park Urban Renewal Assocs., 154 N.J. 437, 456-57 (1998). "The exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006). Courts are thus "free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law . . . [because] a subsequent motion to dismiss must be granted." Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 256-57 (App. Div. 1997) (quoting Mustilli v. Mustilli, 287 N.J. Super. 605, 607, (Ch. Div. 1995)). Applying these standards, we discern no abuse of discretion in the denial of OSBNJ's motion to amend.

An attorney owes an independent duty of care to a non-client when the attorney "intended or should have foreseen that the [non-client] would rely on the [attorney's] work" or when the attorney "know[s], or should know, that non-clients will rely on the attorney['s] representations and the non-clients are not too remote from the attorney[] to be entitled to protection." Petrillo v. Bachenberg, 139 N.J. 472, 482-84 (1995) (citation omitted). To sustain a malpractice claim, a non-client must show that reliance on the attorney's actions or representations was reasonably foreseeable by the attorney, as it is the reasonably foreseeable reliance by the non-client on the attorney's representation that imposes the duty of care. Id. at 483-84. As our Supreme Court further clarified in Banco Popular N. Am. v. Gandi, 184 N.J. 161, 180 (2005):

> If the attorney['s] actions are intended to induce a specific non-client['s] reasonable reliance on his or her representations, then there is a relationship between the attorney and the third party. Contrariwise, if the attorney does absolutely nothing to induce reasonable reliance by a third party, there is no relationship to substitute for the privity requirement.

"Put differently, the invitation to rely and reliance are the linchpins of attorney liability to third parties." Id. at 181.

There are no facts in this case showing that Gianforcaro did anything in the performance of his duties as an attorney to induce

OSBNJ to rely on his actions or representations as an attorney. Gianforcaro did not represent W.W. in connection with the settlement agreement. He had no involvement whatsoever in the negotiation or preparation of the settlement agreement, and gave no false or misleading information to OSBNJ about the settlement agreement or confidentiality clause and liquidated damages provision. Further, OSBNJ and Gianforcaro are adversaries, making them too remote from one another for OSBNJ to maintain a legal malpractice claim against him. Thus, Gianforcaro owed no independent duty of care to OSBNJ as a non-client.

Albright and Fitzgerald, on which OSBNJ relies, do not change this result. Our decision in Albright turned on the attorney's duty to act in the best interests of a non-client because the attorney knew his client had power of attorney for the non-client, which the client used to sell the non-client's stock in order to make a loan of the proceeds to himself. 206 N.J. Super. at 630. We did not apply the five-factor balancing test to find the attorney had a duty to the non-client. Rather, we found there was an attorney-client relationship between the attorney and non-client despite the lack of a formal contract because at the time of the stock sale and loan, the attorney was aware of the conflict of interest between his client and the non-client and potential

for harm to the non-client. <u>Id.</u> at 632. Such circumstances did not exist here.

In <u>Fitzgerald</u>, 336 N.J. Super. at 469-71, we found there was an attorney-client relationship between the plaintiff and the attorney; however, the attorney's duty of care was limited by the scope of his representation of the plaintiff in her capacity as executrix of her late husband's estate, not her estate planning. We also found the attorney owed no independent duty of care to the plaintiff's children, who were non-clients, to advise them of the tax consequences of disclaiming insurance proceeds because of the limited scope of his representation, and because the children were not beneficiaries of the husband's estate. <u>Id.</u> at 472-73. Likewise, here, Gianforcaro's representation was limited to litigating W.W.'s claims against OSBNJ, not to negotiating the settlement agreement. Gianforcaro is OSBNJ's adversary attorney in this litigation, and thus, OSBNJ had no reason to rely on his actions as an attorney.

In the absence of Gianforcaro's independent duty of care to OSBNJ, a non-client, the proposed legal malpractice claim was unsustainable as a matter of law and would not have survived a motion to dismiss. Accordingly, the motion to amend was properly denied.

A-1158-16T3

Gianforcaro moved for summary judgment on the breach of contract and breach of duty of good faith and fair dealing claims. He argued, in part, that he was not bound by the confidentiality clause.

Roth submitted a certification in support of the motion and Broderick submitted a certification in opposition. The certifications differed significantly as to the parties' intent regarding the confidentiality clause and liquidated damages provision. Roth certified:

> At the time the [s]ettlement [a]greement was signed, I understood that my firm and I were bound by the [a]greement's confidentiality provision. I further understood that by its terms, the [s]ettlement [a]greement barred me and my law firm from representing any other former or current Delbarton students who may have been abused by [the priest].
>
> At no time during the negotiation of the [s]ettlement [a]greement did any party or attorney raise or discuss the issue of whether any other attorney or attorneys who represented . . . [W.W.], other than me or my law firm, would be bound by the [s]ettlement [a]greement or the confidentiality contained therein.
>
> At no time during the negotiation of the [s]ettlement [a]greement did any party or attorney raise or discuss a question about potential sources of recovery in the event of a breach of the confidentiality provision other than a return from . . . [W.W.] of the

12                                                    A-1158-16T3

actual funds paid to them under the [s]ettlement [a]greement.

My understanding at the time the [s]ettlement [a]greement was signed was that in the event of a confidentiality breach by . . . [W.W.], myself, or any member of my firm, OSBNJ would be entitled to seek return of the settlement funds from . . . [W.W.].

To the contrary, Broderick certified that "during [the parties'] extensive negotiations, it was the clear intent of both parties to create a strong confidentiality provision with respect to the settlement." To that end, the terms "attorney" and "agent" were included in the liquidated damages clause "to cover all potential sources of a breach" and "to make the provision as broad and strong as possible and give OSBNJ a direct right to secure reimbursement from [W.W.'s] attorney and/or agent in the event that the attorney and/or agent breached the agreement." To support this assertion, Broderick pointed to post-settlement dispute over an alleged breach of the confidentiality clause, where Broderick had confirmed to Roth, and Roth did not deny, that Roth was potentially liable if he breached the confidentiality clause. Broderick also certified:

I reiterate under penalty of perjury that it was our clear intent to create a strong and broad liquidated damages clause. Consistent with this intention, the phrase "agents or attorney" was specifically included in the liquidated damages clause to bind [W.W.'s] agents and attorneys to the agreement and give

13

OSBNJ the right to a direct recovery from any [W.W.] agents and attorneys who divulged the terms of the settlement.

Having the right to a direct recovery from several sources, including the agent or attorney who actually committed the breach, was consistent with the emphasis that the parties placed on keeping the terms of the settlement confidential and manifested the clear intention of the parties to create a strong and broad confidentiality provision.

OSBNJ's right to a direct recovery from [W.W.'s] attorneys and agents was discussed by Mr. Roth and me during our prolonged settlement negotiations and agreed to by Mr. Roth. The inclusion of the phrase "agents or attorney" was consistent with the overriding purpose of the agreement, and was intended to memorialize that OSBNJ had the right to seek a direct recovery from any [W.W.] agent or attorney who might divulge the terms of the settlement and breach the confidentiality provision.

[T]he allegation contained in . . . Roth's certification that "at no time did OSBNJ or its attorneys discuss (or even suggest) the possibility that I, my firm, or anyone besides [W.W.] might be responsible for contractual damages arising from a confidentiality breach" is categorically false.

Similarly, the allegations contained in . . . Roth's certification are also patently false as our inclusion of the terms "agent" and "attorney" memorialized our discussions and agreement allowing a direct recovery in the amount of the settlement proceeds paid to [W.W.] from Mr. Roth, his firm and any [W.W.] "agent" or "attorney" who breached the confidentiality provision.

14

The intent of the provision was to hold the individual who actually breached the confidentiality, whether it be [W.W.] . . . Mr. Roth, any member of Mr. Roth's firm or any [W.W.] agent or attorney personally and directly responsible for repayment of the settlement proceeds.

The motion judge made no finding as to whether Gianforcaro was bound by the confidentiality clause. Rather, the judge found there was no evidence the parties' intended for anyone other than W.W. to be responsible for liquidated damages in the event of a breach of the confidentiality clause. The judge rejected Broderick's certification, finding it was "written in conclusory terms or [was] written in terms of personal opinion that [Broderick] had in his mind as to what the effect of the language would be."

On appeal, OSBNJ argues the judge failed to view the evidence in a light most favorable to OSBNJ and improperly weighed the evidence, decided material facts in dispute, and made credibility determinations.[4] We agree.

---

[4] We reject OSBNJ's additional argument that the law of the case doctrine applies to the court's prior rulings on the breach of contract claim. There was no ruling made on the merits of that claim. Lombardi v. Masso, 207 N.J. 517, 538-39 (2011). In addition, because we reverse the grant of summary judgment and remand for further proceedings, we do not address OSBNJ's argument that Gianforcaro is bound by the confidentiality clause and liable for breach of contract and the duty of good faith and fair dealing.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Like the trial court, our "function is not . . . to weigh the evidence and determine the truth . . . but to determine whether there is a genuine issue for trial." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995) (citation omitted). To make this determination, we must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill, 142 N.J. at 536).

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). As our Supreme Court has instructed:

> a determination whether there exists a "genuine issue" of material fact that precludes summary judgment requires the motion judge to consider whether the competent evidential materials presented, when viewed in

16

the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.

[Brill, 142 N.J. at 540 (1995)).]

Summary judgment should be denied when the determination of material disputed facts depends primarily on credibility evaluations. Petersen v. Twp. of Raritan, 418 N.J. Super. 125, 132 (App. Div. 2011) (citation omitted). It has been long-settled that credibility is always for the factfinder to determine. Ferdinand v. Agric. Ins. Co. of Watertown, N.Y., 22 N.J. 482, 492 (1956).

If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). Applying the above standards, we conclude that summary judgment was improperly granted.

Our review of a trial court's interpretation and construction of a contract is de novo. Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014). "[We] give 'no special deference to the trial court's interpretation and look at the contract with fresh

eyes.'"  Ibid. (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

The construction of a written contract is usually a legal question for the court, suitable for disposition on summary judgment, unless there is ambiguity or the need for parol evidence to aid in interpretation. Driscoll Constr. Co. v. State Dep't of Transp., 371 N.J. Super. 304, 313-14 (App. Div. 2004) (citations omitted); see also Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009) (the interpretation and construction of a settlement agreement is a matter of law).  The court's aim is to determine the intentions of the parties to the contract, as revealed by the language used, the relations of the parties, the attendant circumstances, and the objects the parties were trying to attain.  Driscoll Constr. Co., 371 N.J. Super. at 313 (citation omitted).  "[W]here the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."  Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (quoting Karl's Sales and Serv., Inc. v. Gimbel Bros., Inc., 249 N.J. Super. 487, 493 (App. Div. 1991)).

Whether a contract is ambiguous is a legal question for the court.  Nester v. O'Donnell, 310 N.J. Super. 198, 210 (App. Div. 1997).  To ascertain the intention of the parties, and to determine

if an ambiguity exists, a court may, if necessary, consider extrinsic evidence offered to support conflicting interpretations. Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269-70 (2006). Extrinsic evidence permissible to consider in the event of an ambiguity includes "consideration of the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." Id. at 269 (quoting Kearny PBA Local #21 v. Town of Kearny, 81 N.J. 208, 221 (1979)). If there is an ambiguity, then the resolution of the ambiguity is for the jury. Michaels v. Brookchester, Inc., 26 N.J. 379, 388 (1958).

We conclude that the liquidated damages provision is ambiguous with respect to whether OSBNJ could directly recover damages from any of W.W.'s agents or attorneys who breach the confidentiality clause. Viewing the evidence in the light most favorable to OSBNJ, which the motion judge failed to do, there is a genuine issue of material fact as to what the parties intended with respect to the liquidated damages clause. There were also credibility issues that must be decided by the factfinder.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1158-16T3