206 N.J. Super. 625 (1986)
503 A.2d 386
ANITA M. ALBRIGHT, COEXECUTRIX OF THE ESTATE OF ETTA MAE BURNS, AND HENRY FARER, SUBSTITUTED ADMINISTRATOR WITH THE WILL ANNEXED OF EMIL E. BRUCH, PLAINTIFFS-APPELLANTS,
v.
JOHN F. BURNS, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF EMIL E. BRUCH, AND HARVEY R. POE, INDIVIDUALLY, AND AS ATTORNEY FOR THE ESTATE OF EMIL E. BRUCH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 26, 1985.
Decided January 16, 1986.
*628 Before Judges SHEBELL, MUIR and MATTHEWS.
Margolis, Chase, Kosicki, Aboyoun & Hartman, P.A., attorneys for appellant Albright (Eric L. Chase, of counsel; Mark C. Perlberg, on the brief).
Farer, Siegal & Fersko, Attorneys for appellant Farer (Jack Fersko, of counsel and on the brief).
Keith J. Burns, attorney for respondent Burns.
Ribis, McCluskey, Graham & Decotiis, attorneys for respondent Poe (Bruce R. Volpe and Laura M. McGeough, on the brief).
The opinion of the Court was delivered by SHEBELL, J.A.D.
*629 Plaintiffs appeal the denial of their motion for partial summary judgment and the granting of defendants' motions for judgment at the conclusion of plaintiffs' case.
Plaintiffs brought suit against defendants, John F. Burns and attorney Harvey R. Poe, charging fraud, conversion, breach of fiduciary duty and negligence, alleged to arise out of dealings with the personal assets of Emil E. Bruch, which transpired before and after his death.
Plaintiff Anita M. Albright, the daughter of Etta Burns, is coexecutrix of her mother's estate. The mother, the sister of Emil Bruch, was the residuary legatee under his will. John Burns, the brother of Ms. Albright, was named coexecutor and trustee under the mother's will. The two children were to share equally all property interests Etta was to receive under Emil's will. Plaintiff Henry Farer is the substituted administrator of Bruch's estate pursuant to an order of the Probate Part removing Burns as executor and Poe as attorney for the estate, upon exceptions raised by Ms. Albright.
Plaintiffs maintain defendants participated in the unauthorized sale of 1,100 shares of A.T. & T. stock owned by Bruch prior to his death. It is their contention that because of a collusive arrangement between Burns and Poe, Burns was able to use the proceeds of the stock sale, under the guise of a loan, for his own business ventures, thereby depriving Bruch's estate of its largest asset.
Plaintiffs moved for summary judgment against Poe. The motion was denied. The motion judge was of the opinion there was a factual issue as to whether Poe deviated from the standard of care required of an attorney. The allegations of fraud made by Albright against Poe were dropped during the course of trial.
At the close of plaintiffs' case, defendant Burns consented to a judgment against him in the amount of $89,139.72, being the amount of the loan plus interest. The court dismissed all of the *630 plaintiffs' remaining claims against both defendants for lack of proof.
The evidence reflects that Bruch's health deteriorated during the last few years of his life and that he required hospitalization on five separate occasions from November of 1978 to his death on December 29, 1980. In December of 1978 while hospitalized with a fractured clavicle he executed a general power of attorney in favor of his nephew, the defendant Burns. According to Burns, the uncle was having difficulty in communicating, and would lose his memory and touch with reality from time to time.
Burns desired to sell his uncle's A.T. & T. stock in order to use the proceeds for his business. He discussed this intention with his uncle, who expressed concern, indicating he might need the money for his own care. Burns assured his uncle he would not need money because he would care for him as he was earning $800 per week. It appears, however, Burns was not receiving any wages but had instituted a law suit to compel their payment. He also represented the money would be used on a short-term basis, and would be repaid in 30 to 60 days. Bruch indicated he did not like the idea, but finally reluctantly consented in March of 1979.
Burns consulted Poe who had represented him in other matters. Poe recognized there was a potential conflict in Burns' use of the power of attorney to sell the stock in order to make a loan of the proceeds to himself. He advised Burns against such action. Burns insisted he had a valid power of attorney, had received permission from Bruch and was therefore going to proceed notwithstanding Poe's advice. Burns obtained the stock certificates from Bruch's safe deposit box and sold the stock.
Burns instructed the broker to make the check payable to Emil Bruch and to forward it to Poe. Poe received the check in early April of 1979. Both Burns and Poe endorsed the check which Poe deposited in his trust account. On April 11, 1979 a *631 note at 6 percent interest for the full amount of the check was prepared by Poe and executed by Burns. No collateral was pledged as security although Burns owned a biological laboratory in Florida which allegedly had receivables and equipment valued around $165,000. Poe did not notify Bruch of receipt of the sale proceeds and within two days of their deposit entirely disbursed the funds by checks drawn for Burns' own purposes.
Upon assuming his duties as executor of his uncle's estate, Burns retained Poe as attorney for the estate, even though a different attorney had been requested in Bruch's will. The promissory note was included in the valuation of the estate, listed in the transfer inheritance tax returns and its value used in computing the tax on the estate as well as in determining Burns' commission. Ms. Albright in filing exceptions to the accounting made by Burns took exception to the reporting of the note, its interest rate and Poe's attorney fees. She requested an explanation of the transaction occurring before Bruch's death.
Plaintiffs seek compensatory damages from Poe asserting he owed a fiduciary duty to Bruch and his estate and committed malpractice in failing to properly advise Bruch concerning the loan or by failing to properly protect the stock sale proceeds. They also seek punitive damages.
Summary judgment must be granted if the proofs indicate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. R. 4:46-2. The trial court must not decide issues of fact; they must only decide whether there are such issues. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73 (1954). The moving party must sustain the burden of showing the absence of a genuine issue of material fact. Id. at 74. All inferences of doubt are construed against the movant and in favor of the opponent. Id. at 75.
The test for involuntary dismissal of plaintiffs' case under R. 4:37-2(b) is whether:

*632 ... accepting as true, all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. [Dolson v. Anastasia, 55 N.J. 2, 5 (1969)].
The court is not concerned with the weight, worth, nature or extent of the evidence but only with its existence as viewed most favorably to the party opposing the motion. Id. at 5-6.
The requisite elements of legal malpractice are: 1) the existence of an attorney-client relationship creating a duty of care upon the attorney; 2) the breach of such duty; and 3) proximate causation. See Tormo v. Yormark, 398 F. Supp. 1159, 1169-1173 (D.C.N.J. 1975).
We first consider whether an attorney-client relationship can be deemed to exist between Poe and Bruch where there has been no articulation of such professional engagement between the parties. It has been held that an attorney's acceptance of representation need not be articulated and may be inferred from the conduct of the parties. In re Palmieri, 76 N.J. 51, 58-59 (1978).
We find sufficient relationship, even though there was an absence of contact between Bruch and Poe. Burns was acting under the power of attorney he obtained from Bruch. It was his duty to act in Bruch's best interests. Poe was aware of the relationship and potential conflict. In such circumstances, we hold that Poe's accepting the proceeds of the stock sale and his preparation of the promissory note were acts evidencing his acceptance of professional engagement on behalf of Bruch's interests. While it is true those same acts can also be viewed as being carried out to protect Burns' interests, rather than to protect Bruch, we would be remiss not to construe such acts to provide the greatest possible public protection where, as here, the attorney was well aware of the conflict and potential for harm.
Further, a member of the bar owes a fiduciary duty to persons, though not strictly clients, who he knows or should *633 know rely on him in his professional capacity. Palmieri, 76 N.J. at 59; In re Hurd, 69 N.J. 316, 330 (1976); In re Genser, 15 N.J. 600, 606 (1954); Stewart v. Sbarro, 142 N.J. Super. 581, 593 (App.Div. 1976), certif. den. 72 N.J. 459 (1976); Drinker, Legal Ethics (1953), at 92. We think it follows that privity should not be required between the attorney and one harmed by his breach of duty where the attorney had reason to foresee the specific harm which occurred. See Sbarro, 142 N.J. Super. at 593.
In Sbarro, 142 N.J. Super. at 593, we quoted from Donald v. Garry, 19 Cal. App.3d 769, 97 Cal. Rptr. 191, 192 (D.Ct.App. 1971):
The determination of whether the duty undertaken by an attorney extends to a third person not in privity "involves the balance of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (Biakanja v. Irving, 49 Cal.2d 647, 650, 320 P.2d 16, 65 A.L.R.2d 1358 (1958); see also Lucas v. Hamm, 56 Cal.2d 583, 15 Cal. Rptr. 821, 364 P.2d 685 (1961)).
While not controlling, Poe's dereliction can be gauged from a viewing of RPC 1:15 of the newly-adopted Rules of Professional Conduct which provides in pertinent part:
Safekeeping Property
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property....
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive. (emphasis ours).
The Comment to this Rule states that a "lawyer should hold property of others with the care required of a professional fiduciary." See Report of New Jersey Supreme Court Committee *634 on the Model Rules of Professional Conduct, Special Supplement, N.J.L.J., July 19, 1984; see also Code of Professional Responsibility, DR 9-102(B).
The issue was clearly before the trial court as to whether Poe in these circumstances had the duty to notify Bruch of receipt of the proceeds and had the obligation to consult with him as to whether he desired to proceed with the loan, had proper advice concerning its advisability, or desired to take steps to insure security for the loan.
Further, we have difficulty fathoming how Poe could recognize that Burns would be in conflict in exercising his power of attorney to make himself a loan of his uncle's assets but fail to recognize that if he represented Burns he also would be in the position of attempting to "serve two masters in the same subject matter [where] their interests are or may become actually or potentially in conflict." In re Donald C. Chase, 68 N.J. 392, 396 (1975); DR 5-105; RPC 1.7. In addition, Poe should have been aware of the conflict in his representing the estate and its principal debtor. 68 N.J. at 396.
Poe urges that a violation of ethical standards is not tantamount to tortious conduct, particularly with regard to liability to a non-client. See Bickel v. Mackie, 447 F. Supp. 1376, 1383-1384 (N.D.Iowa 1978), aff'd 590 F.2d 341 (8th Cir.1978); 7A C.J.S., Attorney & Client § 142 at 187. While violations of ethical standards do not per se give rise to tortious claims, the standards set the minimum level of competency which must be displayed by all attorneys. See Hill v. Willmott, 561 S.W.2d 331, 333-334 (Ky.App. 1978); 7A C.J.S., supra, § 142 at 187. Where an attorney fails to meet the minimum standard of competence governing the profession, such failure can be considered evidence of malpractice. See Lamb v. Barbour, 188 N.J. Super. 6, 12 (App.Div. 1982), certif. den. 93 N.J. 297 (1983).
*635 While the burden of proving proximate causation between the breach of duty and the loss is upon plaintiffs, we think it clear Poe's conduct aided in divesting Bruch's estate of its most important asset. See State v. Jersey Central Power & Light Co., 69 N.J. 102, 110 (1976); Long v. Landy, 35 N.J. 44, 54 (1961); Lamb, 188 N.J. Super. at 12.
Plaintiffs' proofs give rise to an inference of malpractice by Poe. Dismissal was unwarranted. See Sbarro, 142 N.J. Super. at 591-592; Collins v. Greenstein, 61 Hawaii 26, 40, 595 P.2d 275, 283 (1979); Central Cab Co. v. Clarke, 259 Md. 542, 551, 270 A.2d 662, 667 (1970); 7A C.J.S., supra, § 271 at 498-499 (1980).
While punitive damages may be awarded for the violation of a fiduciary duty, the right to punitive damages arises from the wrongfulness of an intentional act. Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49 (1984). Mere negligence, even if gross, is generally held insufficient. DiGiovanni v. Pessel, 55 N.J. 188, 190 (1970); Nappe, 97 N.J. at 50; W. Prosser and W. Keeton on the Law of Torts, § 2 at 9-10 (5th ed. 1984). From the facts presented we find no basis to conclude that Poe's actions constituted such intentional wrongdoing or willful and wanton disregard for the rights of Bruch and the estate as to warrant punitive damages.
Punitive damages are sought from Burns for his alleged acts of wrongdoing. The facts give rise to an inference that Bruch was of failing health and suffered periods of mental infirmity. A fiduciary relationship may be deemed to have existed between Burns and Bruch by reason of their closeness, family relationship, entrustment, the granting of the power of attorney and Burns' promises that he would provide for his uncle. See Stroming v. Stroming, 12 N.J. Super. 217, 224 (App.Div. 1951), certif. den. 8 N.J. 319 (1951); Foster v. Medela, 9 N.J. Super. 195, 201-202 (App.Div. 1950).
*636 This evidence demonstrated sufficient basis to shift the burden to the defendant Burns to disprove any impropriety. Haynes v. First Nat'l. State Bk. of N.J., 87 N.J. 163, 176 (1981) (undue influence affecting validity of will). While Plaintiff's claim for punitive damages cannot rest upon suspicious circumstances alone, fraudulent misrepresentations would be sufficient basis for punitive damages, since intent rather than mere negligence would thus be satisfied. Nappe, supra, 97 N.J. at 50. Where fraud is found, damage may be presumed. Jewish Center of Sussex County v. Whale, 165 N.J. Super. 84, 90 (Ch.Div. 1978), aff'd 172 N.J. Super. 165 (App.Div. 1980), aff'd 86 N.J. 619 (1981).
Fraud of course is never presumed; it must be clearly and convincingly proven. Williams v. Witt, 98 N.J. Super. 1, 4 (App.Div. 1967); Gerard v. DiStefano, 84 N.J. Super. 396, 399 (Ch.Div. 1964). We are satisfied it was inappropriate to dismiss plaintiffs' claim for punitive damages as the facts permitted an inference of reliance, undue influence and misrepresentations. See In re Dodge, 50 N.J. 192, 227 (1967); Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 25-27 (1957). If the loan was obtained through misrepresentations it would be tantamount to a conversion thereby supporting an award for punitive damages. See Winkler v. Hartford Acc. & Indem. Co., 66 N.J. Super. 22, 29 (App.Div. 1961), certif. den. 34 N.J. 581 (1961).
We have considered defendants' contention that Ms. Albright is without standing to prosecute the within action. We find it to be clearly without merit. See Pressler, Current N.J.Court Rules, Comment R. 4:26-1 (1985).
We affirm the dismissal of the punitive damage claims against Poe, but reverse the dismissal of the compensatory damage claims against him. We reverse the dismissal of the punitive damage claims against Burns. We remand to the trial court for further proceedings and do not retain jurisdiction.