OPINION OF THE COURT
PER CURIAM.
By complaint dated January 31, 1995, Chemical Bank New Jersey N.A., succeeded in interest by Northern New Jersey Limited Liability Company, (“the Bank”) brought a fraudulent conveyance action in the Superior Court of New Jersey against Stephen Yacuk, his wife Christine Yacuk and his son Richard Yacuk. In March of 1995 Stephen and Christine Yacuk filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the District of New Jersey. On May 1,1998, the Bank removed the fraudulent conveyance action to the Bankruptcy Court as an adversary proceeding. Thereafter, Howard B. Lip-stein, Esquire was added as a defendant in the fraudulent conveyance action. On February 16, 2000, the Honorable Novalyn L. Winfield, Bankruptcy Judge, granted Lipstein’s motion for summary judgment.[1] The decision of the Bankruptcy Judge was affirmed by the District Court. The Bank has filed the instant appeal. We have jurisdiction pursuant to 28 U.S.C. § 158(d). For the reasons that follow we will affirm the District Court.
I. FACTS
The facts relevant to the instant appeal are as follows. As a corporate officer of Warren Hills Development Corporation (‘Warren Hills”), Stephen Yacuk provided a personal guarantee for a $1.95 million loan obtained by Warren Hills from the Bank. The Warren Hills loan went into default, and on May 28, 1991, the Bank wrote to the Yacuks and informed them that they were personally responsible for the repayment of the outstanding balance *884 of the loan plus interest. The total claim on the loan was $688,321.71.
After receiving this letter, the Yacuks decided to convey their personal residence, which was valued at approximately $500,000, to their son Richard. The Yacuks retained Lipstein to facilitate the transfer. The Yacuks told Lipstein that they wanted to convey the property to Richard because he had been paying the mortgage and other bills on the property. Lipstein did not question the Yacuks concerning Richard’s payments, when he began making the payments, or whether there was documentation of the payments. Lipstein asked Stephen Yacuk whether there were any judgments, hens, or claims against him and Stephen told him that there were none. Lipstein did not specifically ask Stephen whether he had any outstanding loans for which he was responsible either as a borrower or guarantor.
On July 9, 1991, the Yacuks conveyed the residence to Richard. Lipstein prepared the documents including a letter stating that consideration for the conveyance was one dollar because Richard had been paying the mortgage and other bills on the property. The letter stated, inter alia, that as new title owner, Richard was responsible for continuing to pay the mortgage and other residence expenses. It also stated that Lipstein had not done a title search on the property and could not make any representations with regard to liens or encumbrances on the premises. After this conveyance, the Yacuks continued to live at the residence.
On July 21, 1991, the Bank commenced an action against the Yacuks as personal guarantors of the loan, and obtained a default judgment against them on March 2, 1992. Lipstein represented the Yacuks in the post-judgment collection proceedings. On September 15, 1992, Stephen and Christine Yacuk were each deposed by the Bank. They each testified with regard to the transfer of the residence to their son, and each testified that this conveyance was made because they owed money to their son. No documentation supporting their obligation to their son was provided.
On approximately May 20, 1993, United National Bank (“United”), the mortgagee on the Yacuks’ residence, filed a complaint in foreclosure alleging payment defaults and failure to pay property taxes. Lip-stein again represented the Yacuks. The complaint was against all of the Yacuks and also named the Bank as a defendant. The complaint contained a count alleging breach of the terms of the mortgage by attempting to transfer all right, title, and interest in the property to Richard. The Bank acknowledged service of United’s complaint on August 4, 1993, and in court filings related to this foreclosure action, the Bank acknowledged that the transfer of the residence to Richard was possibly a fraudulent conveyance.
On September 23, 1993, United filed a motion for summary judgment. The Bank was served with this motion. One of the footnotes in United’s brief, stated that “it is believed that the transfer of title rendered Stephen and Christine Yacuk insolvent and that it was made with the intent to defraud [United] and other creditors.” Judgment in the foreclosure action was entered against all three Yacuks.
On December 17, 1993, while being represented by Lipstein, Richard conveyed the residence to bona fide purchasers for $345,000. At the closing, the Yacuks’ debt to United was paid from the sale proceeds. The remainder of the proceeds, nearly $194,000, was paid to Richard in the form of two checks which Lipstein delivered to the Yacuks. Richard endorsed the checks and gave them to his parents.
*885 On January 12, 1995, during the Bank’s proceedings to enforce the default judgment against the Yaeuks on the Warren Hills loan, the depositions of Stephen, Christine, and Richard Yacuk were taken. Lipstein represented Stephen and Christine at their depositions. Stephen and Christine both testified again that their residence had been transferred to Richard in July 1991. However, for the first time, Christine denied that Richard had made any mortgage or property tax payments on the residence. Richard testified at his deposition not only that he had never made any payments on any note, mortgage, or household bills related to the residence, but also that his parents continued to pay these expenses from the time of the conveyance to Richard until he sold the property on December of 1993.
II. STANDARD
A grant of summary judgment is proper only if it appears that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056. Our review of a grant of summary judgment is plenary. Rosen v. Bezner, 996 F.2d 1527, 1530 & n. 2 (3d Cir.1993).
III. DISCUSSION
The question presented in this appeal is whether the Bankruptcy Court erred in concluding that Lipstein, acting in his capacity as attorney for the Yaeuks, owed no duty to the Bank, a non-client, under New Jersey law. New Jersey has recognized certain situations in which an attorney owes a limited duty to non-client third parties. See Petrillo v. Bachenberg, 139 N.J. 472, 655 A.2d 1354, 1357-58 (N.J. 1995). The New Jersey courts have found that an attorney “owes a fiduciary duty to persons, though not strictly clients, who he knows or should know rely on him in his professional capacity.” Id. at 1358 (quoting Albright v. Burns, 206 N.J.Super. 625, 503 A.2d 386, 389 (N.J.Super.1986)).
In general, the New Jersey courts have limited finding any such duty to cases where an attorney has taken affirmative action or made a representation to a non-client. For example, in Stewart v. Sbarro, 142 N.J.Super. 581, 362 A.2d 581, certif. denied, 72 N.J. 459, 371 A.2d 63 (N.J.Super.1976), the court found that where an attorney should foresee that a non-client may rely on the attorney’s promise to act, he may be held liable for failing to do so. Id. at 593-94, 362 A.2d 581. In Albright v. Burns, 206 N.J.Super. 625, 503 A.2d 386 (N.J.Super.1986), the court found that an attorney who knowingly facilitated improper transactions involving the holder of the decedent’s power of attorney, was liable to the decedent’s estate even absent a showing of privity, where the attorney engaged in acts which, “evidenc[ed] his acceptance of professional engagement on behalf of [the decedent’s] interests.” Albright, 503 A.2d at 386. Similarly, in R.J. Longo Construction Co. v. Schragger, 218 N.J.Super. 206, 527 A.2d 480 (N.J.Super.1987), the court found that township attorneys who had prepared contract documents to be used in a construction bid process could be held liable to the winning bidder for failure to obtain certain easements explicitly required by the contract after the township had notified the winning bidder to proceed with construction. Id. at 481-82. The court stated that an attorney “owes a duty to persons, though not strictly clients, who he knows or should know rely on him in his professional capacity,” finding that the plaintiff had reasonably relied on representations that the township attorneys would obtain the necessary easements. Id. at 481. Significantly, the court refused to hold the township attorneys liable for negligently drafting the contract at issue, *886 observing that because independent counsel could have been consulted regarding the contract, “there was no reasonable reliance upon defendants.” Id. at 482. Finally, in Petritto, 189 N.J. 472, 655 A.2d 1354 (N.J.1995), the New Jersey Supreme Court held that an attorney who had created a misleading document had a duty to non-clients “not to misrepresent negligently the contents of a material document on which he knew others would rely to their financial detriment.” Petritto, 655 A.2d at 1362. The Petritto court expressed the view that recognition of such a duty would protect innocent third parties from negligent misrepresentations by lawyers without leading to more costly and cumbersome legal services. Id.
In the instant case, Lipstein owed no duty to the Bank. Lipstein never affirmatively or impliedly undertook any action on behalf of the Bank, nor did he make any representation to the Bank or its attorneys which one would expect that the Bank would rely upon to its financial detriment. At the time of the initial conveyance of the property, Lipstein had no reason to foresee that the Bank would be adversely affected. Nothing in the record indicates that Lipstein made any representation or omission to the Bank that would have prevented the Bank from discovering the fraudulent conveyance. In fact, as early as September 1992, when the Yacuks testified that they had transferred their residence to their son, and again in 1993, when the Bank filed documents in the foreclosure action, the Bank and its attorneys were on notice of the possibility of a fraudulent conveyance. The Bank is a sophisticated lender which was at all relevant times represented by counsel. Lipstein was under no duty to advise the Bank and its attorneys concerning that which they already knew.
We have carefully considered all of the Bank’s arguments and we conclude that they are without merit. The final Order of the District Court affirming the decision of the Bankruptcy Court is affirmed.

. The Bank’s motion for summary judgment against Stephen Yacuk, Christine Yacuk and Richard Yacuk was granted at the same time.