**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0636-17T1

IN THE MATTER OF THE
ESTATE OF SUSAN J. PORTO,
        Deceased.

_____

Argued November 28, 2018 – Decided May 10, 2019

Before Judges Fuentes, Accurso and Vernoia.

On appeal from Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000069-16.

John K. Walsh, Jr., argued the cause for appellant/cross-respondent Cathy Timpone (Walsh & Walsh, attorneys; John K. Walsh, Jr., of counsel and on the briefs).

Christopher K. Leyden, II, argued the cause for respondent/cross-appellant Ronald Porto (Leyden Law, LLC, attorneys; Christopher K. Leyden, II, of counsel and on the briefs).

PER CURIAM

In this probate matter, plaintiff Cathy Timpone appeals from an April 28, 2017 Chancery Division order approving the first and final accounting she filed

as executrix of the estate of her mother, Susan Porto (decedent), with the exception of $121,891.28 in savings bonds that the court determined should be included in the corpus of the estate. Defendant Ronald Porto, plaintiff's brother and decedent's son, cross-appeals from the order, claiming the court erred by finding that four joint bank and brokerage accounts totaling $93,649.99 held by plaintiff and decedent were not part of the corpus of the estate. Plaintiff and defendant also appeal from the court's August 25, 2017 order allocating attorney's fees and costs and rejecting defendant's request that the court surcharge plaintiff's commissions. We affirm the April 28, 2017 order. We also affirm the August 25, 2017 order, with the exception of the court's denial of defendant's request for attorney's fees and costs in the action he filed, which we vacate and remand for further proceedings.

I.

Decedent passed away on March 16, 2012, two-and-a-half years after the death of her husband, Carl Porto, in August 2009. Decedent was survived by plaintiff, defendant and six grandchildren. Decedent's Last Will and Testament (Will), dated November 5, 1997, which was amended and republished by codicil on November 4, 2010, appointed plaintiff executrix of the estate and devised the

A-0636-17T1

residuary estate into thirds: one-third to each of her children, and the remaining third to be divided evenly between her grandchildren.

In September 2014, defendant filed a verified complaint seeking a formal accounting of the estate and plaintiff's removal as executrix. In an October 29, 2015 order, the court dismissed the complaint with prejudice, directed that plaintiff file an account and preserved defendant's claims to surcharge plaintiff's commissions and for attorney's fees and costs pending the outcome of any challenge to the accounting.

Four months later, plaintiff filed a verified complaint to settle the First and Final Account (first account), which covered the period from the date of decedent's death through December 31, 2015. Defendant filed exceptions to the first account, and made three claims pertinent to this appeal. First, he asserted that on or about February 19, 2010, two years prior to decedent's death and while she suffered from debilitating physical conditions and dementia, decedent transferred $121,891.28 in savings bonds that she inherited from her sister, Florence Wilson, to plaintiff. Defendant asserted plaintiff acted as decedent's attorney-in-fact when the transfer occurred, challenged its propriety and requested that it be set aside.

3

Second, defendant claimed decedent converted four bank and brokerage accounts totaling $93,649.99 into joint accounts with plaintiff while decedent suffered "from infirm capacity" and was subject to plaintiff's undue influence. Defendant requested the transfers be set aside and the accounts be included in the corpus of decedent's estate.

Last, defendant asserted the commissions and fees sought by plaintiff were "excessive, especially in view of the improper acts taken in the administration of [the] estate." Defendant requested that the court disallow the first account, award damages, remove plaintiff as executrix, surcharge plaintiff's commissions, disallow plaintiff's requests for an award of attorney's fees and costs, and award defendant attorney's fees and costs.

The court conducted a four-day bench trial on the issues raised by defendant's exceptions and made detailed findings concerning decedent's transfer of the bonds and conversion of the bank and brokerage accounts into joint accounts with plaintiff.

The Bonds

The court determined that the savings bonds, which had been the property of Florence Wilson, passed to decedent in November 2008 following Wilson's death and pursuant to Wilson's Will. The court rejected as uncorroborated,

4

contrived and implausible plaintiff's testimony that Wilson gave her the bonds in 2006, and that plaintiff accepted them at that time but chose to leave them in Wilson's home until Wilson passed away. The court noted that Wilson did not bequeath the bonds to plaintiff and the bonds were listed on Wilson's estate tax returns as assets of her estate. Moreover, the court explained that subsequent to the execution of her Will, Wilson conferred with her attorney about amending the Will to include a bequest of the bonds to plaintiff, but never did so.

The court found the bonds were neither gifted to plaintiff nor inherited by plaintiff from Wilson. Instead, the court determined decedent inherited the bonds from Wilson because decedent was the sole beneficiary of Wilson's residuary estate, which included the bonds.

The court next considered whether decedent effectively made an inter vivos gift of the bonds to plaintiff. The court explained decedent "met with . . . counsel and created written evidence of her intent to gift the bonds to [plaintiff]," but that:

> [T]his gifting was undertaken at a time when [decedent] was [eighty-eight] years of age, very soon after the devastating loss of her husband Carl, at a time [decedent] was in diminished physical and mental health, and while she was in a deeply trusting, confidential and dependent relationship with the putative donee—her daughter [plaintiff], in whose home she was residing.

5

The court further found that "memorialization of [decedent's] supposed intent to gift the bonds was done by [plaintiff's] counsel," decedent was "uncounseled" and the purported gifting was "implemented through the assistance and guidance of [plaintiff's] son . . . a financial advisor to both his mother [plaintiff] and his grandmother [decedent]."

The court found plaintiff had a confidential relationship with decedent beyond that which was "characteristic or typical of parents and adult children who are close." The court noted that decedent resided in plaintiff's home from September 2009 until her death on March 16, 2012, and during that time did not drive, was dependent on plaintiff for her shelter, nourishment, transportation to and from medical care and the attendance of her home health care aides. Decedent further relied on plaintiff for assistance with her finances and having her medications organized. Moreover, prior to decedent taking residence in plaintiff's home, decedent granted plaintiff a "plenary, durable authority over her finances and medical affairs." The court concluded that plaintiff and decedent's relationship was "one of complete trust, and intimate dependence and reliance by an aged, ailing parent, upon the ultimate recipient of the purported gift of $121,891.28 in bonds."

A-0636-17T1

The court concluded that although there was no evidence plaintiff engaged in trickery or improper conduct to obtain the transfer of the bonds, she did not present clear and convincing evidence that decedent was not unduly influenced by plaintiff and, therefore, failed to sustain her burden of demonstrating that the process by which the transfer was made "was either fair or voluntary, or well understood." The court noted that plaintiff was counseled concerning the transfer of the bonds, but decedent "was entirely unrepresented and uncounseled in the transaction." Decedent only spoke to plaintiff's attorneys and the transfer was accomplished by plaintiff's son, who served as both plaintiff's and decedent's financial advisor. The court relied on the lack of any independent legal or financial advice to decedent regarding the transfer to support its conclusion that plaintiff failed to establish the transfer was free, open, voluntary and well understood by decedent.

The court further explained the evidence established "[s]everal of the classic hallmarks of undue influence." They included the age and failing health of decedent, her "markedly diminished capacity," her inability to drive, cook for herself or organize her medications, and her multiple hospitalizations and stays in rehabilitation facilities in the years following her husband's death in 2009. The court noted that decedent resided with plaintiff and the attorney who drafted

7

the codicil to decedent's Will, which removed defendant as the co-executor and made plaintiff the sole executrix of the estate, was not the attorney who drafted the Will. This new attorney was recommended by plaintiff's son. The durable power of attorney granting plaintiff authority over decedent's medical and financial affairs was drafted by plaintiff's son and witnessed by plaintiff's fiancé.

The court explained that these facts weighed against a finding that decedent's alleged gift of the bonds was free of undue influence, in a manner that was open, voluntary and well understood, and concluded plaintiff failed to sustain her burden. The court determined the bonds were not effectively gifted by decedent to plaintiff and therefore were part of decedent's estate upon her death.

The Bank and Brokerage Accounts

The court made separate findings concerning decedent's decision on four separate occasions during 2010 and 2011 to add plaintiff as the joint holder of four bank and brokerage accounts. The court found plaintiff clearly established decedent's close friend Stella Gregorowicz provided decedent with the idea and impetus to create the joint accounts and that decedent did so, as Gregorowicz suggested, to reward plaintiff for her extensive caregiving. The court determined plaintiff "wisely retained a right to the funds while she lived, in case

she needed them, knowing that what remained would go directly to the child who had cared for her in her final years." The court also found that disposition of the accounts was "prompted by the example of [decedent's] old friend," and "originated not from [plaintiff] or from members of her family, but from [decedent] of her own free will." The court concluded decedent's conversion of the accounts to joint accounts with rights of survivorship "was voluntary, relatively open, free of the taint of undue influence, and sufficiently understood by" decedent, and therefore the accounts were not part of decedent's estate.

Attorney's Fees and Costs

The court separately considered plaintiff's and defendant's applications for attorney's fees and costs and defendant's challenge to plaintiff's claimed commissions. Following argument, the court determined that the estate shall pay half of defendant's counsel fees in the action filed by plaintiff to settle the first account, and that the balance of the fees incurred by defendant in that matter shall be paid by him. The court also found plaintiff personally responsible for half of her attorney's fees and costs in the action she filed to settle the first account and that the remaining half of her counsel fees and costs should be paid by the estate.

The court denied defendant's requests that the estate pay his attorney's fees in the action he brought to compel the accounting and remove plaintiff as executrix, and to require that plaintiff personally pay all of the fees and costs in both actions. The court granted plaintiff's request that the estate pay her attorney's fees and costs incurred in connection with the action filed by defendant. The court denied defendant's request that plaintiff's commissions be surcharged.

The court entered an April 28, 2017 judgment on accounting approving the first account in all respects, other than its exclusion of the savings bonds from the corpus of the estate. The court entered an August 25, 2017 order on the parties' claims for attorney's fees and costs and on plaintiff's commissions. Plaintiff's appeal and defendant's cross-appeal followed.

II.

We defer to a judge's bench trial findings and conclusions of fact based on his or her ability to perceive witnesses and assess credibility. See Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974). We do not "engage in an independent assessment of the evidence as if [we] were the court of first instance," State v. Locurto, 157 N.J. 463, 471 (1999), and will "not weigh the evidence, assess the credibility of witnesses, or make conclusions

about the evidence," Mountain Hill, LLC v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (quoting State v. Barone, 147 N.J. 599, 615 (1997)). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence . . . ." In re Tr. Created By Agreement Dated December 20, 1961 ex rel. Johnson, 194 N.J. 276, 284 (2008) (quoting Rova Farms, 65 N.J. at 484).

"Reversal is reserved only for those circumstances when we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'" Llewelyn v. Shewchuk, 440 N.J. Super. 207, 214 (App. Div. 2015) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). Such a mistake may arise from the court's "obvious overlooking or underevaluation of crucial evidence." Pioneer Nat'l Title Ins. Co. v. Lucas, 155 N.J. Super. 332, 338 (App. Div. 1978). We review the trial court's interpretation of law de novo. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Plaintiff argues the court erred by finding a confidential relationship existed between her and decedent, and by shifting the burden to her to prove, by

clear and convincing evidence, that the inter vivos transfer of the bonds was not the product of undue influence. We disagree.

Undue influence is "a mental, moral, or physical exertion . . . that destroys the free will of the testator by preventing that person from following the dictates of his or her own mind as it relates to the disposition of assets, generally by means of a will or inter vivos transfer in lieu thereof." In re Estate of Stockdale, 196 N.J. 275, 302-03 (2008). A party contesting an inter vivos transfer must prove the gift was induced by the undue influence of the beneficiary; however where the gift "benefits one who stood in a confidential relationship to the testator and if there are additional 'suspicious' circumstances, the burden shifts to the party who stood in that relationship." Id. at 303 (quoting In re Rittenhouse's Will, 19 N.J. 376, 378-79 (1955)). The additional "suspicious" circumstances need only be slight in order for the burden to shift to the beneficiary of the gift. Ibid.

"The nature of a confidential relationship is difficult to define, but encompasses all relationships," Pascale v. Pascale, 113 N.J. 20, 34 (1988), including, but not limited to "'all cases of technical, legal, fiduciary relationship[s], such as guardian and ward, principal and agent, trustee and

cestui que trust,[1] but also all cases where trust and confidence actually exist,'" ibid. (quoting In re Fulper's Estate, 99 N.J. Eq. 293, 314 (Prerog. Ct. 1926)). Confidential relationships exist, in general, where "the testator, 'by reason of . . . weakness or dependence,' reposes trust in the particular beneficiary, or if the parties occupied a 'relation[ship] in which reliance [was] naturally inspired or in fact exist[ed].'" Stockdale, 196 N.J. at 303 (alterations in original) (quoting In re Hopper, 9 N.J. 280, 282 (1952)). "Among the most natural of confidential relationships is that of parent and child." Pascale, 113 N.J. at 34.

Although a confidential relationship does not automatically exist between a parent and a child, such a relationship exists where "the circumstances make it certain that the parties do not deal on equal terms, but on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." In re Codicil of Stroming, 12 N.J. Super. 217, 224 (App. Div. 1951). In Albright v. Burns, we found a confidential relationship existed between an uncle and his nephew where the uncle's health was failing, requiring the nephew to take care of him. 206 N.J. Super. 625, 635 (App. Div. 1986). We

---

[1]  The term cestui que trust is synonymous with beneficiary. It is defined as "[o]ne who possesses equitable rights in property, [usually] receiving the rents, issues, and profits from it[.]" Black's Law Dictionary 277 (10th ed. 2014).

held that a confidential relationship may be found through the family members' "closeness, family relationship, entrustment, the granting of power of attorney," and promises to provide. Ibid.

Here, the court made detailed factual findings, which we previously recounted, supporting its determination that decedent had a confidential relationship with plaintiff. We defer to those findings because they are supported by substantial credible evidence, see Rova Farms, 65 N.J. at 484, and discern no basis to reverse the court's legal conclusion. Plaintiff's contentions to the contrary lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

The court also correctly determined that because a confidential relationship existed between decedent and plaintiff, the burden of proof shifted to plaintiff to show "by clear and convincing evidence not only that 'no deception was practiced therein, no undue influence used, and that all was fair, open and voluntary, but that [the transfer] was well understood.'" Pascale, 113 N.J. at 31 (quoting In re Dodge, 50 N.J. 192, 227 (1967)). Evidence that is clear and convincing "should produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." In re

14

Purrazzella, 134 N.J. 228, 240 (1993) (quoting Aiello v. Knoll Golf Club, 64 N.J. Super. 156, 162 (App. Div. 1960)).

We reject plaintiff's claim that the court erred by finding she failed to sustain her burden. To be sure, there was conflicting evidence concerning the circumstances surrounding decedent's decision to transfer the bonds to plaintiff. The court, however, weeded through the evidence and made credibility determinations and detailed factual findings supported by substantial credible evidence. Again, we defer to the court's findings, see Rova Farms, 65 N.J. at 484, concerning the manner in which the transfer occurred, and are satisfied the court correctly determined plaintiff failed to sustain her burden of establishing by clear and convincing evidence that the transfer was voluntary and well understood by decedent.

We similarly reject defendant's contention that the court erred by finding plaintiff established by clear and convincing evidence that decedent's decision to add plaintiff as a joint holder of four bank and brokerage accounts was not the result of undue influence. Defendant claims the court's finding is inconsistent with its determination that the transfer of the bonds, which occurred during the same time period, was the result of undue influence.

A-0636-17T1

The court carefully considered the evidence relevant to the bank and brokerage accounts and made a determination supported by substantial credible evidence that the accounts were converted to joint accounts without plaintiff's undue influence. The factual finding underpinning the determination—that decedent decided to add plaintiff as a joint account holder at the suggestion of her close friend—is founded upon substantial credible evidence and supports the court's conclusion that decedent's decision to change the accounts, unlike her decision to transfer the bonds, was voluntary and well understood by decedent.

The evidence shows Stella Gregorowicz suggested to decedent that she establish joint accounts as a means of rewarding her caretaker, and plaintiff testified decedent said she and Gregorowicz discussed the legal implications of setting up a joint account and decedent understood the accounts would go directly to plaintiff when decedent died. Thus, although there is evidence supporting a contrary conclusion and defendant argues the court should have interpreted the evidence differently, there is substantial credible evidence supporting the conclusion that decedent's decision to add plaintiff as a joint holder of the accounts was not the product of undue influence but instead was the product of a voluntary and intentional choice based on the recommendation

16

of a close friend. We therefore affirm the court's order finding the four bank and brokerage accounts are not part of decedent's estate.

Plaintiff and defendant last challenge the court's orders on their respective claims for attorney's fees and costs related to defendant's action to remove plaintiff as the executrix and for an accounting, and plaintiff's action to settle the first account. We review a court's decision on an award or denial of a request for attorney's fees for an abuse of discretion. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 443-44 (2001). We will reverse an attorney fee award "only on the rarest of occasions, and then only because of a clear abuse of discretion." Litton Indus. v. IMO Indus., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co., 167 N.J. at 444).

The court ordered that the estate pay one-half of defendant's attorney's fees and costs in the action plaintiff filed to settle the first account. The court reasoned that defendant is entitled to the fees and costs under Rule 4:42-9(a)(2) by creating a fund in court through his successful challenge to decedent's putative inter vivos gift of the bonds to plaintiff. Plaintiff challenges the court's award under Rule 4:42-9(a)(2) only "in the event" we reverse the court's finding that the putative gift of the bonds was invalid. Because we have affirmed the

court's determination, plaintiff's challenge to the court's award of the fees and costs to defendant in the action to settle the first account is moot.

Plaintiff also argues the court erred by determining she is personally responsible for one-half of the attorney's fees and costs she incurred in her action to settle the first account. She contends the court misapplied the Supreme Court's decision in In re Niles Trust, 176 N.J. 282, 298 (2003), in determining that she should pay one-half of her fees in the action to settle the first account. In Niles, the "Court created a narrow exception to the American Rule and allowed attorneys' fees to be assessed against an executor or a trustee who 'commits the pernicious tort of undue influence.'" In re Estate of Folcher, 224 N.J. 496, 498 (2016) (quoting Niles, 176 N.J. at 298).

Here, the court expressly noted that the facts did not support an application of Niles and did not find plaintiff responsible for one-half of the fees she incurred based on an application of Niles. Rather, the court required that plaintiff pay half of her fees in the action to settle the first account because she spent approximately fifty percent of her efforts in that matter pursuing her personal and ultimately meritless claim that the bonds were effectively gifted to her and were therefore not part of the estate. As noted, the court properly rejected that contention and, in its decision on her application for attorney's fees,

determined the estate should not "bear the expenses of [plaintiff], who fought to exclude from the estate and advance her own personal interests over those of the estate in saying that [the] bonds were [hers and] they don't belong to the estate." We discern no abuse in the court's reasoning or decision. See, e.g., In Re Will of Landsman, 319 N.J. Super. 252, 272 (App. Div. 1999) (finding a fiduciary attorney "is not entitled to [a fee award] if his client merely sues for his own interest or benefit").

Defendant challenges the court's orders denying his request to surcharge plaintiff's commissions as executrix, denying his request that plaintiff be required to pay his attorney's fees and costs in both actions, denying his request that he be awarded attorney's fees and costs in the action he brought to remove plaintiff as executrix and for a final accounting, and denying his request for the estate to pay all of his fees in plaintiff's action to settle the first account.

Defendant claims the court erred by limiting his award of attorney's fees in the plaintiff's action to settle the first account to only one-half of the fees and costs he incurred. His arguments are founded on the premise that he should have been awarded all of the fees and costs because the court erred by finding decedent properly made plaintiff a joint holder of the bank and brokerage accounts. For the reasons already noted, we affirm the court's determination as

to the accounts and thus reject defendant's arguments challenging the awards of attorney's fees and costs that are premised on a different finding.

Moreover, the court's decision to award defendant only fifty percent of the fees he sought in plaintiff's action to settle the first account is also properly based on the court's assessment that only two issues were contested in the action—the validity of the inter vivos transfer of the bonds and the propriety of decedent's creation of the four joint accounts—and that plaintiff prevailed on one and defendant prevailed on the other. The court did not abuse its discretion by allocating attorney's fees and costs from the estate at fifty percent for plaintiff and defendant. The court did not abuse its discretion by finding that neither plaintiff nor defendant is entitled to an award of fees or costs based on their respective prosecutions of claims the court determined lacked merit and rejected. See, e.g., Empower Our Neighborhoods v. Guadagno, 453 N.J. Super. 565, 585 (App. Div. 2018) (affirming an attorney fee award which "reduced fees in light of [the plaintiff's] failure to prevail on each and every issue").

Defendant further contends the court erred by denying his request for attorney's fees and costs in the prosecution of his initial action, which sought plaintiff's removal as executrix and an order for a final accounting. As noted, the action was dismissed with prejudice and with entry of an order directing that

20

plaintiff file an accounting.[2]  In plaintiff's action to settle the first account, the court rejected defendant's request for attorney's fees and costs in the first action because it concluded no fund was created in that action from which an award of fees and costs could be imposed under Rule 4:42-9(a)(2), and the initial action did not achieve any benefits for the estate.

To award attorney's fees pursuant to Rule 4:42-9(a)(2), a court is required to undertake a two-step analysis.  "First, the court must determine as a matter of law whether [the movant] is entitled to seek an attorney fee award under the fund in court exception as articulated in Henderson[ v. Camden County Municipal Utility Authority, 176 N.J. 554 (2003)]."  Porreca v. City of Millville, 419 N.J. Super. 212, 228 (App. Div. 2011).  If the court determines a movant is entitled to the fee award, the court "then has the 'discretion' to award the amount, if any, it concludes is a reasonable fee under the totality of the facts of the case."  Ibid. (quoting R. 4:42-9(a)(2)).

In Henderson, our Supreme Court held that the "fund in court exception generally applies when a party litigates a matter that produces a tangible economic benefit for a class of persons that did not contribute to the cost of the

---

[2]  The order dismissing defendant's action for an accounting and to remove the plaintiff as executrix preserved defendant's right to request attorney's fees and costs in the anticipated action to approve the first account.

A-0636-17T1

litigation." Henderson, 176 N.J. at 564. Indeed, "when litigants through court intercession create, protect, or increase a fund for the benefit of a class of which they are members, in good conscience the cost of the proceedings should be visited in proper proportion upon all such assets." Sarner v. Sarner, 38 N.J. 463, 469 (1962).

Here, the court erred by determining defendant was not entitled to attorney's fees in the initial litigation because "[n]o fund in [c]ourt was created" at the conclusion of that litigation. A party need not create a fund in court to be entitled to an award of attorney's fees pursuant to Rule 4:42-9(a)(2). See Henderson, 176 N.J. at 564-66. Defendant's action resulted in an order compelling plaintiff to file the first account, which revealed a putative gift of $121,891.28 in savings bonds that plaintiff incorrectly failed to include in the corpus of the estate. In addition, defendant did "more than merely advanc[e] his own interests," id. at 564 (quoting Sunset Beach Amusement Co. v. Belk, 33 N.J. 162, 168 (1960)), as the initial action sought an accounting of the estate assets undertaken to "protect . . . a fund for the benefit of a class," Sarner, 38 N.J. at 469, including the six grandchildren who benefitted from the inclusion of the bonds in the estate. We therefore vacate the August 25, 2017 order, to

the extent it denies defendant's request for attorney's fees and costs in the action he filed, and remand for the court to consider the request.

Although we hold that defendant has shown an entitlement to reasonable attorney's fees, we make no judgment as to the quantum of such fees. The calculation of the quantum of fees to which defendant is entitled is a discretionary determination for the trial court on remand. See Porreca, 419 N.J. Super. at 228; see also R. 4:42-9(a)(2).

We are not persuaded by defendant's final contention—that the court erred by denying his request to surcharge plaintiff's commissions. Defendant argues the commissions should have been surcharged because the corpus was reduced by the fees and costs it was required to pay for his challenge to plaintiff's transfer of the bonds.

The record shows plaintiff's commissions were awarded by the court based on the estate's income and corpus as permitted under N.J.S.A. 3B:18-13 and N.J.S.A. 3B:18-14, respectively. "An executor is generally entitled to a commission based on the value of the estate; but if an executor engages in misconduct, [her] commission may be surcharged, and [her] monies offset by the loss [she] caused the estate." Folcher, 224 N.J. at 510. The court correctly denied defendant's request for a surcharge because the court expressly found

23

plaintiff did not engage in any misconduct or trickery related to the transfer of the bonds. The court instead found that because plaintiff had a confidential relationship with decedent, there was a presumption of undue influence, and plaintiff failed to present evidence overcoming the presumption. Because the court affirmatively determined plaintiff did not engage in misconduct, there is no basis supporting the requested surcharge of her commission, see ibid. and we are convinced the court did not abuse its discretion by denying defendant's request for a surcharge of the commissions.

Any arguments made by the parties that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated in part and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0636-17T1